## Wolf and Bernheisel's Appeal.

1. The 9th section Article 11 of the Constitution of Pennsylvania, does not prohibit the erection or division of townships or school districts by the legislature.

2. The erection or division of new townships or school districts, is an act of municipal organization rather than a grant of power.

May 12th 1868.　Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ.　READ, J., absent.

Appeal from the decree of the court of Common Pleas of *Perry county* : In Equity : Of May Term 1868.

This was a bill filed March 22d 1867, by Jacob Bixler against Abraham Stahl, Henry Wolf, and Cornelius Bernheisel, to restrain them as supervisors from expending taxes in Madison township in the manner set out in the bill.

In August 1857, the township of Madison was divided into two election districts, one called Sandy Hill and the other Madison.

On the 26th of February 1867, the legislature passed an act authorizing the electors of each election district in Madison township to elect on the third Friday of March 1867, " two supervisors, six school directors (two for one year, two for two years, and two for three years), one assessor, three auditors (one for one year, one for two years, and one for three years), one township clerk, and one constable; and annually thereafter two supervisors, two school directors, one assessor, and one assistant assessor when required by law, one auditor, one township clerk, and one constable, and the road and school taxes levied and collected in each district of said township shall be expended and used in the district in which the same was levied and collected.　The constable of said township shall give notice of the first election under this act, and the auditors of each election district shall form a joint board to audit and settle the accounts of the treasurer of the bounty fund of said township.　Provided, that the said township shall be and remain divided into two election districts whilst it continues as one township."

Under this act the voters of Madison district elected Cornelius Bernheisel and Henry Wolf supervisors of that district, they receiving 61 votes each ; they also elected six school directors, &c. ; the voters of Sandy Hill district elected Abraham Stahl and the same Henry Wolf supervisors of the township, they receiving 88 votes each, *two* school directors, &c., not regarding the Act of Assembly as valid.

John Bixler, a taxpayer of the township, brought his bill against the three persons elected supervisors, to restrain them from expending the taxes collected in the township as directed in the act.

[Wolf's Appeal.]

The court (Graham, P. J.) decreed that, "Abraham Stahl, Henry Wolf and Cornelius Bernheisel be enjoined and restrained as supervisors of Madison township aforesaid, from expending and using the road taxes collected in each of the election districts in said township, so that no more nor no less of said taxes shall be used in any one of the aforesaid election districts than is collected in the said district, and that Abraham Stahl and Henry Wolf have been legally elected supervisors of the said township of Madison, they having received a majority of all the votes polled in said township. And the said Cornelius Bernheisel is enjoined and restrained from interfering or intermeddling with the said Henry Wolf and Abraham Stahl in the performance of their duties as supervisors of said township."

From this decree Wolf and Bernheisel appealed and assigned it for error, the only question being whether the Act of February 26th 1867 is constitutional.

*W. A. Sponsler* and *W. H. Miller*, for appellants, cited Const. of Penna. Art. 11, § 9, (Pamph. L. 1864, 1054) 5; Jacob's Law Dict. 249, "Power;" Id. 287, "Privilege."

The reporter received no paper-book from the appellee.

The opinion of the court was delivered, May 27th 1868, by

STRONG, J.—The single question presented by this record is whether the Act of Assembly of February 26th 1867, entitled "An Act to authorize the election of additional officers in the township of Madison, Perry county," is constitutional. Before the act was passed the township had been divided into two election districts. It authorized the electors of each district to elect, on the third Friday of March 1867, two supervisors, six school directors (two for one year, two for two years, and two for three years), one assessor, three auditors (one for one year, one for two years, and one for three years), one township clerk, and one constable, and annually thereafter, two supervisors, two school directors, one assessor and assistant assessors, when required by law, one auditor, one township clerk and one constable. The act further enacted that the road and school taxes levied and collected in each district of the said township shall be expended and used in the district in which the same were levied and collected, with a proviso that the said township shall be and remain divided into two election districts, whilst it continues as one township.

Beyond doubt this is a covert but substantial division of Madison township into two townships. All township offices and agencies are given by the act to each election district. The levy of taxes and the expenditure of them are confided to the officers chosen by the different divisions, and the officers chosen in one are

powerless within the other. No organization of Madison township as an entirety is left. There is not a single township power or function which does not belong to each district, unless it be the right to sue. Two sets of officers, each constituting a complete corps, are constituted with powers and duties extending over and limited by distinct divisions of territory. It would be subordinating substance to a name were we to hold that the act does not practically divide the old township. The inquiry then is whether it is competent for the legislature to pass an act dividing a township since the amendment to the Constitution of 1864, arranged as the 9th sec. of the 11th art. That amendment is as follows :—
"No bill shall be passed by the legislature granting any powers or privileges in any case where the authority to grant such powers or privileges has been or may hereafter be conferred upon the courts of the Commonwealth." Power was given to Courts of Quarter Sessions, by the Act of April 15th 1834, to erect new townships, divide those already erected, and alter township lines. So was the power to erect separate school districts, by the Act of May 8th 1855. But the constitutional amendment does not deny to the legislature power to do all things which the courts are or may be authorized to do by general law. The amendment has only in view the grant of powers and privileges. The erection of a new township, or school district, or the division of an old one, is an act of municipal organization rather than a grant of power. Powers and privileges may follow it, but they do not rest upon it. They depend for their existence upon the general law which regulates such municipal divisions, not upon the act that makes the division. It is difficult to conceive of any general law which does not indirectly confer powers and privileges, but it cannot be said to be a grant of them within the meaning of the words used in the 9th section of the 11th article. It cannot be said that a Court of Quarter Sessions grants powers and privileges, within the sense of the same article, when it orders a division of a township. Power to levy taxes, to support schools, and to do other acts, follows such an order, but neither the new township nor its officers take the power from the order of the court. They take it from the general law respecting townships and school districts. They are in no just sense grantees of the court. Equally true is it that a legislative act creating another township is not itself a grant of powers or privileges. It is merely an arrangement of governmental machinery. So important is it that the authority to direct municipal organization should be constantly in the legislature, that it ought to be very clear the constitution denies it, before we rule it does not exist. It concerns the public interests. Though in most cases it may be left to the action of the courts or to a local popular vote, cases may arise where the interference of the legislature is a necessity. Not only is there no such clear denial

[Wolf's Appeal.]

in the amendment of the constitution of the power to divide townships, but its history shows it was not intended for any such purpose. Prior to its adoption much of the time of the legislature had been consumed in the enactment of special laws conferring corporate powers, rights to sell or mortgage real estate, or other personal and peculiar privileges. These enactments were often obtained without notice to parties affected by them, and without full revelation of the facts. No public interests required that such grants to individuals should be made by the legislature, when the courts of the neighborhood were empowered to confer the same rights and privileges in all proper cases. The machinery of the courts was better adapted to the ascertainment of the facts. The parties to be affected could be called in, and thus the danger of improvident grants of power be diminished. These considerations gave rise to the new provision in the constitution. It had in view direct grants to individuals, and we think it would be extending its meaning beyond its intent, were we to hold that it applies not only to grants of powers and privileges to individuals, but also to laws respecting municipal organization, which are in no recognised sense the bestowal of power, or the endowment of privileges. It follows that, though the Act of February 26th 1867 is awkward, and embarrassing in its present form, it is not unconstitutional. The complainant's bill, therefore, presents no case for an injunction such as it claims.

> The decree of the Court of Common Pleas is reversed, and the bill of the complainants is dismissed with costs.

THOMPSON, C. J., dissented.